

**IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA**
**CIVIL ACTION**

James F. Chvala

      Plaintiff,

        Case No. 20-10562

   v.

Harmony Fire District a/k/a Harmony Fire
District Station 22

       Defendant.

Type of Document: _____Complaint in Civil Action_____

If this is a Complaint, designate whether the case is subject to Compulsory Arbitration (Jurisdictional amount $35,000) or not.

_____ amount in controversy does not exceed $35,000

__X___ amount in controversy exceeds $35,000

_____ issues in case are not subject to Compulsory Arbitration

Does this complaint involve consumer credit card collection _____ Y ____x_____ N

Does this complaint involve residential mortgage foreclosure proceedings _____ Y __X__ N

Filed on behalf of __James F. Chvala___ (Plaintiff / Defendant)

Counsel of record for this party___Todd M. Pappasergi, Esq___ (Name of attorney primarily responsible)

Supreme Court I.D. No. _209389_____

The Lynch Law Grp. (Firm Name, if any)

501 Smith Dr. Ste. 3 (Address) Cranberry Twp., PA 16066

_724-776-8000_____ (Phone)

_724-776-8001_____ (Fax Number)

_tpappasergi@_____ (E-Mail Address)
lynchlaw-group.com

PROTHONOTARY
2020 AUG -4 P 1:11
PROTHONOTARY'S
OFFICE-BUTLER CO.
ENTERED & FILED

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

| | |
|---|---|
| JAMES F. CHVALA | CIVIL DIVISION |
| Plaintiff, | |
| | Docket No.: _____ |
| v. | Code No.: _____ |
| HARMONY   FIRE   DISTRICT   a/k/a HARMONY FIRE DISTRICT STATION 22, | **PLAINTIFF'S   COMPLAINT   IN   CIVIL ACTION** |
| Defendants. | Filed on Behalf of: |
| | JAMES F. CHVALA |
| | Counsel of Record for this Party: |
| | Todd M. Pappasergi, Esquire<br>Pa.I.D. No. 209389<br>tpappasergi@lynchlaw-group.com<br>Kathleen D. Snyder, Esquire<br>Pa.I.D. No. 324169<br>ksnyder@lynchlaw-group.com |
| TO: Defendants | THE LYNCH LAW GROUP, LLC<br>Cranberry Professional Park<br>501 Smith Drive, Suite 3<br>Cranberry Twp., PA 16066<br>TEL: (724) 776-8000<br>FAX: (724) 776-8001 |
| You are hereby notified to file a written response to the enclosed Complaint within twenty (20) days from service hereof, or a judgment may be entered against you. | |

_____
Todd M. Pappasergi, Esquire

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

JAMES F. CHVALA                           CIVIL DIVISION

                    Plaintiff,            Docket No.:

         v.

HARMONY  FIRE  DISTRICT   a/k/a
HARMONY FIRE DISTRICT STATION
22,

            Defendants.


### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.   THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE         Butler County Prothonotary
Butler County Bar Association   300 South Main Street
240 South Main Street           Butler, PA 16001
Butler, PA 16001                (724) 284-5214

2

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

JAMES F. CHVALA

Plaintiff,

v.

HARMONY FIRE DISTRICT a/k/a
HARMONY FIRE DISTRICT STATION
22,

Defendants.

CIVIL DIVISION

Docket No.:

## PLAINTIFF'S COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff James F. Chvala by and through his attorneys, The Lynch Law Group, LLC, Todd M. Pappasergi, Esquire, and Kathleen D. Snyder, Esquire, and files the following Plaintiff's Complaint in Civil Action, and in support thereof avers as follows:

### The Parties

1.      Plaintiff James F. Chvala ("Mr. Chvala" or "Plaintiff") is an adult individual residing at 930 Perry Highway, Harmony, Pennsylvania 16037.

2.      Defendant is the Harmony Fire District, a/k/a Harmony Fire District Station 22 ("Fire District"), a Pennsylvania not-for-profit corporation, with a business address of 543 Main Street, Harmony, Pennsylvania 16037.

3.      During all relevant times, the Fire District provided primary fire protection and rescue services on behalf of and for the Boroughs of Harmony and Zelienople, and the Townships of Jackson and Lancaster in Butler County, Pennsylvania (hereinafter, the "Municipalities").

4.      As such, the Fire District is a governmental agency and state actor as the same is provided for under federal and Pennsylvania law.

3

5.      From November, 2016 until August 5, 2019, Mr. Chvala was engaged as a volunteer firefighter with the Fire District.

## Jurisdiction and Venue

6.      This court has jurisdiction of the within matter pursuant to 42 Pa.C.S. § 931(a).

7.      Venue is proper in this Court and county in accordance with Pa.R.C.P. 1006(b).

## Factual Background

8.      This litigation arises from the termination and expulsion of Plaintiff from the Fire District based on the Disciplinary Board hearing and membership vote that occurred on or about August 5, 2019.

9.      Prior to the above-mentioned meeting, Mr. Chvala's training, knowledge, and skills were sought after and recruited by the Fire District when they were informed that Mr. Chvala would be moving back to the Butler County area.

10.      Mr. Chvala joined the Fire District around Thanksgiving 2016 and maintained his membership and active participation in the Fire District, providing invaluable experience, public service, and a wealth of knowledge related to fire safety and protection practices.

11.      Mr. Chvala obtained a master's degree in Management with a concentration in Organizational Leadership from Thomas Edison State University. He continued his fire education, receiving degrees in Fire Science Technology and Fire & Safety Management. Additionally, the National Fire Academy and U.S. Department of Homeland Security have both certified Mr. Chvala as an Executive Fire Officer.

12.      During his thirty (30) years of service, Mr. Chvala spent approximately fourteen (14) years as a senior fire protection analyst and has been a public safety instructor for the

4

Pennsylvania State Fire Academy ("Fire Academy") and Butler County Community College ("BCCC") for approximately twenty-five (25) years.

13.     Mr. Chvala's extensive firefighting and fire safety experience rendered him an invaluable asset to the Fire District in addition to the entire community.

14.     All of that changed on August 5, 2019, when a disciplinary hearing was held without Mr. Chvala being invited or able to present any evidence, at the conclusion of which a majority of the membership of the Fire District voted to terminate Mr. Chvala's membership in the Fire District.  Had Mr. Chvala been permitted to respond and present evidence, said evidence would have denied and contradicted the falsified and defamatory allegations of misconduct, as well as detailed two controlled fire burns that were sanctioned and illegally performed by the Fire District.

A.     The Untrue, Falsified, and Defamatory Allegations of Misconduct against Mr. Chvala

15.     On July 29, 2019, the Executive Committee of the Fire District sent Mr. Chvala a letter, in which it stated:

a.     That Mr. Chvala had allegedly placed the Fire District into disrepute on a number of occasions;

b.     That a disciplinary hearing was going to be held on August 5, 2019, whereby the Fire District membership would have access to Mr. Chvala's personnel file, be made aware of these alleged instances of disrepute, and thereafter have a secret ballot vote on whether to expel Mr. Chvala from the membership; and

c.
     That Mr. Chvala he would be informed of the results of the disciplinary hearing at a later date.

A true and correct copy of the July 29, 2019 letter is attached hereto as "Exhibit A."

16.     As related in the July 29 letter, as published to the Fire District Membership at the August 5, 2019 disciplinary hearing, the Executive Committee and Fire District accused Mr.

Chvala of "negative interactions [that] portrayed the [Fire District] in a negative manner" at four eating establishments in 2018 and 2019; two improper "vehicle incidents"; and two instances of improper conduct, including alleged criminal conduct.

        (i)    *The Alleged Restaurant "Incidents"*

17.    As related in the July 29 letter and published to the Fire District membership at the August 5 disciplinary hearing, the Fire District accused Mr. Chvala of acting improperly at:

        a.    A Subway restaurant in 2018;

        b.    Goodfellos' restaurant on September 18, 2018;

        c.    Vocelli's Pizza on February 13, 2019; and

        d.    Hartman's Watering Hole Restaurant in May, 2018.

18.    The July 29 letter did not detail the alleged improper and negative interactions.

19.    Upon information and belief, the Fire District failed to investigate these alleged complaints when they were received and failed to inform Mr. Chvala of the same or ask Mr. Chvala about his version of the alleged interactions that occurred.

20.    Mr. Chvala strongly denies that any such interactions occurred or that he was a customer that frequented all of the alleged establishments.

21.    Indeed, in all of these alleged "incidents," the Fire District was unable to provide the name of the person that reported the interaction, verify that the alleged conduct actually occurred, determine whether Mr. Chvala was, in fact, the person present, or prove that the alleged interaction adversely affected the morale, efficiency, and public confidence in the Fire District.

22.    Mr. Chvala does not recall any "incident" that may have occurred in any Subway restaurant in 2018, and specifically denies the same.

6

23.     Mr. Chvala recalls only one "incident" at Subway, which occurred in January or February of 2017. At that point and time, Mr. Chvala purchased a sandwich, which was incorrectly made. He requested a refund as a result of the error; however, Mr. Chvala would not contextualize the dealings as a "negative interaction."

24.     At the time of the alleged Subway interaction, Mr. Chvala was not in his fireman's uniform, no one appeared to be upset or angry, there were no profanities or loud voices, and overall, he recalls that the interaction was amicably resolved.

25.     Mr. Chvala never returned to Subway or a similar location following the 2017 incident. Instead, and upon information and belief, the alleged incident in 2018 was falsified and never actually occurred.

26.     The July 29 letter indicates two additional incidents where Mr. Chvala allegedly created a negative opinion of himself and the Fire District – Goodfello's Pizza and Vocelli's Pizza.

27.     Upon information and belief, the complaints from these two businesses were manufactured to specifically disparage Mr. Chvala's character and target him. Mr. Chvala cannot recall being a customer of either establishment.

28.     Further, Mr. Chvala has no recollection of visiting Hartman's Waterhole Restaurant at any time during May of 2018 as it was alleged, nor does he recall any interaction or exchange that occurred there, that had a semblance of negativity attached to it.

    *(ii)*    *False Allegations of Misuse of Fire District Property*

29.    Also, in the July 29 letter and as published to the Fire District membership at the August 5 disciplinary hearing, the Fire District falsely accused Mr. Chvala of malfeasance or misuse of Fire District property, without evidence to support the same.

30.    First, the letter referenced a "braking incident" that occurred on June 2, 2018, while en route to a response call.

31.    Mr. Chvala did not respond to any response call with the Fire District on June 2, 2018. As such, it appears that this allegation was manufactured with the intent to portray Mr. Chvala in poor light.

32.    Another incident, which included no date, involved damage to the rear portion of a fire engine that a mechanic had accidentally backed into the Fire District's wall while returning it following the mechanic's servicing of the engine.

33.    The Fire District stated that Mr. Chvala and the mechanic denied culpability for the damage to the engine, which implied that Mr. Chvala was dishonest about his role and liability for the damage. In contrast, Mr. Chvala discovered the damage and denied any involvement in causing the same.

34.    This allegation was included in the letter and reported to the Fire District membership though it was patently false and refuted by the admission from the mechanic that he had mistakenly backed the fire engine into the wall.

    *(iii)*    *Alleged Criminal and Dishonest Conduct by Mr. Chvala*

35.    The Fire District further maligned and injured Mr. Chvala by accusing him of making false statements with regard to the Fire District while in his role as an instructor at BCCC, which the Fire District alleged reflected negatively on the membership.

36.     As set forth more fully hereinabove, Mr. Chvala has been a safety instructor for over twenty-five (25) years and would not make false or disparaging statements that may harm his credibility, his students' learning, or disparage the Fire District.

37.     Further, both the BCCC and Fire Academy adhere to strict codes of conduct and accreditation, which Mr. Chvala observes while teaching.

38.     Additionally, as an instructor for the BCCC and Fire Academy, Mr. Chvala is not permitted to represent any other organization, vendor, or entity.  As such, Mr. Chvala never made any remarks related to or about the Fire District as they would have been against the code of conduct and educational policy.

39.     Upon information and belief, the Fire District failed to provide any information related to when Mr. Chvala allegedly made such statements, who attended the class and heard the statements, or the date when the said statements were made.

40.     Finally, Mr. Chvala was charged with certain crimes in or around January 2019. Said charges were dismissed and expunged when Mr. Chvala entered into an accelerated rehabilitation program, which he successfully completed.

41.     Despite this successful completion, the Fire District suspended Mr. Chavla from duty, from which he never returned.

42.     Upon information and belief, the Fire District failed to show at the Disciplinary Board hearing that Mr. Chvala's conduct was unbecoming or impacted the morale and perception of the Fire District in a negative manner.  Yet, Mr. Chvala was not permitted to return to duty.

43.     No one questioned Mr. Chvala about the incident, and the simple act of being arrested is not a sufficient basis for discipline.  Further, Plaintiff's record of the incident was set to be expunged at the time of the Disciplinary Board hearing.

B.    The Fire District's Illegal Fire Burns

44.    Upon information and belief, Plaintiff was terminated and expelled from the Fire District because it was believed that he reported two controlled fire burns (individually "Fire Burn" or collectively "Fire Burns") that were sanctioned and illegally performed by the Fire District.

45.    Upon information and belief, the first incident occurred in July 2017, when the Fire District was to conduct a controlled burn using a home in Jackson Township.  The fire burn exercise was to provide hands-on training for members responding to a house fire.

46.    Immediately prior to the training, and at the Fire District's request, Mr. Chvala met with a Pennsylvania Department of Environmental Protection Agency ("PaDEP") inspector, who informed Mr. Chvala that the permits necessary to conduct the fire burn were incomplete.

47.    Importantly, Mr. Chvala was not in charge of the July 2017 controlled burn but was only asked to meet with the PaDEP inspector because no Fire District personnel who were part of the training exercise did.

48.    The PaDEP inspector informed Mr. Chvala that the controlled burn did not have the appropriate permitting.

49.    Mr. Chvala reported this back to the Fire District, and, as such, that training class was cancelled.

50.    Upon information and belief, the Fire District alleged they cancelled the class, but the house and an adjacent barn were set on fire and burned by Fire District Officers and members.

51.    Upon information and belief, the second incident occurred in the spring of 2018, when the Fire District conducted a training exercises using a controlled fire burn to provide hands-on training for members responding to a vehicle fire.

10

52.   Upon information and belief, the 2018 fire burn above-mentioned involved the burning of motor vehicles that was discarded and located in a Harmony junkyard. Upon information and belief, no permits were obtained for this fire burn.

53.   Upon information and belief, the Fire District chose to or was provided older model vehicles to burn. Upon information and belief, the older model vehicles contained mercury thermometers, the burning of which is against regulations of the PaDEP.

54.   Not having anyone else's information at the Fire District, the PaDEP inspector contacted Mr. Chvala, whose information the inspector had retained since 2017. During that conversation, the PaDEP inspector advised Mr. Chvala that he saw the Facebook post of the fire burn.

55.   Mr. Chvala informed the PaDEP inspector that he did not participate in the events as he was out of town on both occasions.

56.   Upon information and belief, the illegal fire burns, which are typically controlled, were in contravention of and unpermitted due to the ignorance of Fire District procedures.

57.   Upon information and belief, all fire burns for training exercises were authorized by the Fire District through obtaining the proper permits.

58.   Upon information and belief, the Fire District did not request or obtain a permit, nor were permits issued prior to burning the house and barn or the junkyard vehicles.

59.   As such, the fire burns were illegally conducted.

60.   The training exercises were both clear violations of PaDEP regulations and the Clean Air Act.

61.   As a result of the incidents, the Fire District received a written warning for the fire burn in 2018 and was restricted from performing any other fire burns.

11

62.     Upon information and belief, Fire District members believed that Mr. Chvala reported the illegal fire burn in 2018, which he did not.

C.     The Fire District's Disciplinary Policy and Prevailing Legal Requirements

63.     Fire District Policy No. 04.02.01 – Discipline (the "Policy") outlines a clear process for handling disciplinary actions.

64.     Section 4.0 of the Policy provides that "Disciplinary action will be progressive, starting with corrective, on-the-spot, action." However, "[d]ependent on the seriousness of the offense, discipline may supersede specific steps in the process, only as [deemed] necessary by the disciplinary committee."

65.     The Policy designates offenses into two categories, which merit disciplinary action consistent with the severity of the infraction – Category A offenses and Category B offenses.

66.     Category A offenses include carrying or possessing unlawful drugs on District property, theft, falsification of applications and records, convictions for felonies and drug-related crime, fighting with other members, and deliberately damaging District property.

67.     Category B offenses include unauthorized use of District equipment, carrying unauthorized passengers in District vehicles, using profane or abusive language to other members, failure to follow instructions or orders, failure to submit timely reports, and failure to comply with a practice or policy of the District.

68.     The alleged incidents, which were vaguely provided to Plaintiff in the Fire District's letter and published to the Fire District's membership on August 5, fall short of the conduct enumerated in either Category A or Category B.

69.     Prior to receipt of the Fire District's letter, Mr. Chvala had not been given prior notice of the allegations or been made aware that such incidents were reported.

12

70.   Moreover, the Policy expressly permits Fire District members the right to access and duplicate written documentation for all disciplinary action taken against them, which is to include:

      a.   definition of the category of offense,

      b.   a narrative of the incident,

      c.   identification of the person [or entity] making the allegation, and,

      d.   a copy of all proceeding related to the disciplinary action,

71.   The Policy provides that a member has the right to have a representative, not from management, present at all disciplinary review proceedings, should they choose.

72.   Further, a member has the right to appeal any disciplinary action handed down by Management or the Disciplinary Review Board.

73.   Similar to these policies, prevailing law in both the Commonwealth and the United States mandates that persons employed by, acting for, or otherwise directly engaged by governmental agencies and state actors be provided sufficient due process in order to protect any and all property and liberty rights said persons have in disciplinary functions.

74.   Specifically, disciplinary actions by volunteer fire companies, even when said fire companies are independent of any municipality, are considered state action and action by a governmental agency.

75.   Accordingly, the Fire District's policies both as written and as applied to Mr. Chvala were required to provide the minimum due process necessary, as required under the Fifth and Fourteenth Amendments to the United States Constitution, to protect the property and liberty interests that he possessed in being a member of the Fire District's membership.

D.    The August 5, 2019 Business Meeting and Disciplinary "Hearing"

76.    As noted above, the Fire District notified Mr. Chvala via the July 29 letter "during the August 5ᵗʰ business meeting at 730 pm [sic] the organization will be voting via secret ballot [sic] on your future involvement with the organization.  Prior to the vote, the membership will have the opportunity to ask any questions in regards your history [sic] or performance as a member of the organization.   At this point your personnel record is allowed to be disclosed to the membership so that they can make an educated decision."  July 29 letter, at p.1

77.    The July 29 letter then listed a portion of the Fire District's by laws relating to suspensions and expulsions, but without noting other relevant provisions, such as Mr. Chvala's right to be present at the meeting, present a defense or evidence, or have a representative at the meeting.

78.    The letter did not even invite Mr. Chvala to the meeting.

79.    The letter concluded that the "executive board will follow up in the future [sic] in regard to your status within the organization."  July 29 letter, at p.2.

80.    Upon information and belief, the Fire District caused to be published to the Fire District's membership the false, manufactured, scandalous, and defamatory allegations, as has been already averred herein.

81.    These statements, as reported to the Fire District's membership during the August 5 meeting, were injurious and continued to malign the character of Mr. Chvala with no evidence to support the statements.

82.    Upon information and belief, the Fire District failed to present all of the information it had at the disciplinary hearing on August 5, such as the true nature of the mechanic incident and the illegal controlled burns.

83.     Instead, approximately seven (7) months later, the Fire District manufactured false and misleading allegations against Mr. Chvala in order to terminate and expel him from the Fire District's membership, said allegations being relayed and published to the Fire District's membership during the August 5, 2019 disciplinary hearing.

84.     Upon information and belief, the Fire District did not provide certain information to its members, allowing the members of the Fire District to draw their own conclusions in order to persuade the vote in favor of terminating Mr. Chvala's membership.

85.     Upon information and belief, the Fire District misused its disciplinary process to facilitate the expulsion and termination of Mr. Chvala without evidence of wrongdoing to accomplish the Fire District's objective of ridding the department of an alleged whistleblower.

86.     Upon information and belief, the Fire District failed to follow its own policy and process for disciplinary action, which denied Mr. Chvala due process against the Fire District and those who accused him of conduct unbecoming a member.

87.     Upon information and belief, the Fire District failed to follow its own policy and process to effect the termination and expulsion of Mr. Chvala as a member of Fire District without affording him the right to appear or have a representative appear on his behalf to rebut the accusations against him or appeal the Disciplinary Board's decision.

88.     Upon information and belief, the Executive Board, Disciplinary Review Board, and numerous members of the Fire District willfully published, reviewed, discussed, and shared the alleged allegations during the August 5 meeting with the membership that were forced upon Plaintiff's character without knowledge or concern as to the truth or falsity of those allegations and without obtaining Mr. Chvala's account or response to the same.

15

89.    The Policy provides that a member has the right to have a representative, not from management, present at all disciplinary review proceedings, should they choose.

90.    However, the Fire District denied Mr. Chvala (or a representative) an opportunity to be present at the hearing or respond to the allegations against him

91.    Further, a member has the right to appeal any disciplinary action handed down by Management or the Disciplinary Review Board.  Yet, Mr. Chvala was not given an opportunity to appeal the decision to terminate and expel him from the department, which he learned about in a follow-up letter on or about August 8, 2019.

92.    Upon information and belief, the Fire District failed to provide due process to Mr. Chvala in regard to the claims against him prior to and during his disciplinary hearing, which led to the misuse of process and unfair and dishonest expulsion and termination of Plaintiff from the Fire District.

93.    Upon information and belief, Mr. Chvala was expelled and terminated for alleged incidents that he was involved in, including allegations of misconduct while in the course and scope of his duties as a member of the Fire District.

## COUNT I – DEFAMATION

94.    Plaintiff hereby incorporates the above-pleaded paragraphs by reference as if the same were more fully set forth herein.

95.    Mr. Chvala is a respected and involved member of the community with a record of exemplary work, knowledge, and community service.

96.    Upon information and belief, on August 5, 2019, the Fire District published statements related to Mr. Chvala that its members knew were false or acted with reckless disregard

as to the truth or falsity of the allegations, which maligned his reputation, mislead others, which caused him to lose standing in the department, and attacked his credibility and character.

97.     For a plaintiff to prevail on a claim for defamation[1], he must prove:

    a.    The defendant published a statement to one other than the person defamed;

    b.    The statement was false;

    c.    The statement was understood to be about or concerning the plaintiff;

    d.    The statement was defamatory;

    e.    The statement was made with no regard to its accuracy or in reckless disregard for the truth; and,

    f.    The plaintiff suffered special harm from the statement's publication.

98.     A statement is defamatory if it tends to injure the person in the person's business or profession.[2]

99.     Punitive damages are recoverable if the publisher acted "maliciously," that is, with knowledge of falsity or reckless disregard for the truth.

100.    At the August 5, 2019 business meeting, the Fire District outlined the above-stated and referenced "incidents," knowing that said incidents were false, libelous, and defamatory, and published and discussed the same with the Fire District membership.

101.    Upon information and belief, the Fire District failed to investigate these alleged complaints when they were received and failed to inform Mr. Chvala of the same or ask Mr. Chvala

---

[1] See Tucker v. Phila. Daily News, 848 A.2d 113 (Pa. 2004); Kelley v. Pittman, 150 A.3d 59, 67 (Pa. Super. 2016).

[2] See Joseph v. Scranton Times, L.P., 959 A.2d 322, 334 (Pa. Super. 2008).

about his version of the alleged interactions that occurred in or around 2018, and therefore either failed to ascertain to truth or falsity of the alleged incidents.

102.  In publishing the four restaurant incidents, the two property misuse incidents, and the two incidents alleging conduct unbecoming a firefighter, the Fire District:

      a.  Published false statements about Mr. Chvala to persons other than Mr. Chvala;

      b.  Knew or should have known that the statements were false;

      c.  Made clear that all of the alleged statements were about Mr. Chvala;

      d.  Made the false statements knowing that the same would be injurious to Mr. Chvala's character, reputation, and credibility in the community;

      e.  Made the false statements without any regard for the statements' accuracy or whether they were even true; and

      f.  Ensured that Mr. Chvala would be terminated from the Fire District's membership, thereby causing him special harm to his reputation and his profession as a professional public safety expert, instructor, and professor.

103.  In addition to the failure of the Fire District to ascertain the truth or falsity of the statements, and in acting in reckless disregard for the same, the allegations contained in the Fire District's letter and presented during the Disciplinary Board hearing were pretenses for a personal animus against Mr. Chvala and his involvement with the Fire District.

104.  Upon information and belief, the Fire District unfairly and dishonestly investigated alleged allegations, which led to the expulsion and termination of Plaintiff from the Fire District.

105.  Due to the defamatory actions of the Fire District, Mr. Chvala's public image and reputation in the community was maligned, his reputation in the community was lessened, and his professional credibility has been greatly diminished.

WHEREFORE, Plaintiff James F. Chvala respectfully requests this Honorable Court grant judgment in his favor, and against Defendant Harmony Fire District, and further award the following relief:

    a.  Immediately reinstate Plaintiff as an active member of the Harmony Fire District and/or order that a full disciplinary hearing occur with Plaintiff afforded all rights of due process, including the right to be heard, render a defense, and present evidence;

    b.  Compensatory damages in an amount greater than the limits for judicial arbitration;

    c.  Punitive damages;

    d.  Costs;

    e.  Attorney's fees; and

    f.  Any other relief deemed necessary and proper by this Honorable Court.

## COUNT II – WRONGFUL TERMINATION / ABUSE OF PROCESS

106.  Plaintiff hereby incorporates the above-pleaded paragraphs by reference as if the same were more fully set forth herein.

107.  Upon information and belief, the Fire District failed to follow its own policy and process for disciplinary action and used the process to affect the termination and expulsion of Mr. Chvala as a member of the Fire District without affording him the right to appear or have a representative appear on his behalf.

108.  To establish a claim for abuse of process[3], it must be shown that the defendant:

    a.    used a legal process against the plaintiff;

---

[3] Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998).

        b.      primarily to accomplish a purpose for which the process was not designated; and,

        c.      harm has been caused to the plaintiff.

109.    The gravamen of the misconduct for which liability is stated is imposed not in the wrongful procurement of the legal process or the wrongful initiation of criminal or civil proceedings; [rather], it is the misuse of process, no matter how properly obtained.[4]

110.    Fire District Policy No. 04.02.01 – Discipline (the "Policy") outlines a clear process for handling disciplinary actions as more fully set forth above.

111.    Prior to receipt of the Fire District's letter in July 2019 or the hearing on August 5, 2019, Mr. Chvala had not been given prior notice of the allegations or been made aware that such incidents were reported.

112.    Upon information and belief, the Fire District did not provide certain information to its members, allowing the members of the Fire District to draw their own conclusions in order to persuade the vote in favor of terminating Mr. Chvala's membership.

113.    Upon information and belief, the Fire District misused its disciplinary process to facilitate the expulsion and termination of Mr. Chvala without evidence of wrongdoing to accomplish the Fire District's objective of ridding the department of an alleged whistleblower.

114.    Upon information and belief, the Fire District failed to follow its own policy and process for disciplinary action, which denied Mr. Chvala due process against the Fire District and those who accused him of conduct unbecoming a member.

115.    Upon information and belief, the Fire District failed to follow its own policy and process to effect the termination and expulsion of Mr. Chvala as a member of Fire District without

---

[4] Id.

affording him the right to appear or have a representative appear on his behalf to rebut the accusations against him or appeal the Disciplinary Board's decision.

116.    Moreover, the Policy expressly permits Fire District members the right to access and duplicate written documentation for all disciplinary action taken against them, which is to include:

      a.     definition of the category of offense,

      b.     a narrative of the incident,

      c.     identification of the person or entity making the allegation, and,

      d.     a copy of all proceeding related to the disciplinary action,

117.    Further, a member has the right to appeal any disciplinary action handed down by Management or the Disciplinary Review Board. Yet, Mr. Chvala was not given an opportunity to appeal the decision to terminate and expel him from the department, which he learned of in a follow-up letter on or about August 8, 2019.

118.    Upon information and belief, the Fire District used its Disciplinary Policy to circumvent the rights of Mr. Chvala in regard to the allegations made against him to terminate and expel him from the department.

119.    Similar to these policies, prevailing law in both the Commonwealth and the United States mandates that persons employed by, acting for, or otherwise directly engaged by governmental agencies and state actors be provided sufficient due process in order to protect any and all property and liberty rights said persons have in disciplinary functions.

120.    Specifically, disciplinary actions by volunteer fire companies, even when said fire companies are independent of any municipality, are considered state action and action by a governmental agency.

121.    Accordingly, the Fire District's policies both as written and as applied to Mr. Chvala were required to provide minimum due process necessary as required under the Fifth and Fourteenth Amendments to the United States Constitution to protect the property and liberty interests that he possessed in being a member of the Fire District's membership, as the same is provided for in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985), <u>Janusaitis v. Middlebury Volunteer Fire Department</u>, 607 F.2d 17 (2d Cir. 1979), and their progeny.

122.    Specifically, and as outlined at length herein, the Fire District failed to provide Mr. Chvala with even the most minimum of safeguards in regard to the August 5, 2019 meeting/hearing, to wit: he had no opportunity to respond, he was not afforded an opportunity to attend the meeting/hearing, nor was he given any appellate rights.

WHEREFORE, Plaintiff James F. Chvala respectfully requests this Honorable Court grant judgment in his favor, and against Defendant Harmony Fire District, and further award the following relief:

    a.   Immediately reinstate Plaintiff as an active member of the Harmony Fire District and/or order that a full disciplinary hearing occur with Plaintiff afforded all rights of due process, including the right to be heard, render a defense, and present evidence;

    b.   Compensatory damages in an amount greater than the limits for judicial arbitration;

    c.   Punitive damages;

    d.   Costs;

    e.   Attorney's fees; and

    f.   Any other relief deemed necessary and proper by this Honorable Court.

## COUNT III – WRONGFUL TERMINATION / RETALIATION

123.    Plaintiff hereby incorporates the above-pleaded paragraphs by reference as if the same were more fully set forth herein.

124.    Upon information and belief, Plaintiff was terminated and expelled from the Fire District because it was believed that he reported two controlled fire burns (individually "Fire Burn" or collectively "Fire Burns") that were sanctioned and illegally performed by the Fire District.

125.    For a plaintiff to recover under a wrongful termination claim based on retaliation, the plaintiff must show:

    a.    That plaintiff engaged in a legally protected activity;

    b.    That he was subjected to a negative or adverse job action; and,

    c.    There is a "causal connection" between the legally protected activity and the adverse employment action.

126.    As noted above, in regard to the July 2017 Fire Burn, Mr. Chvala met with a representative of PaDEP *at the request of the Fire District.*

127.    Upon the conclusion of that meeting, PaDEP determined that the Fire District did not have proper permitting of the Fire Burn.

128.    Moreover, in regard to the 2018 Fire Burn at the Harmony Junkyard, Mr. Chvala was not present at the Fire Burn; rather, he was contacted by the same PaDEP representative *unsolicited*, as the PaDEP representative was seeking information about the July, 2018 burn.

129.    Except, Mr. Chvala did not have information to give to the PaDEP representative.

130.    Nevertheless, the Harmony Fire District was sanctioned by PaDEP for their unpermitted, unlicensed Fire Burns.

131.    Upon information and belief, Fire District members believed that Mr. Chvala reported the illegal fire burn in 2018, which boosted the decision to terminate Mr. Chvala's

membership approximately twelve (12) months following the fire burn and contact from the PaDEP. However, Mr. Chvala never spoke to, reported on, or contacted anyone about the illegal fire burn.

132.    Upon information and belief, the Fire District made certain allegations against Mr. Chvala, which were a pretext to provide valid reasons to terminate and expel Plaintiff for abstaining and allegedly reporting the Fire District for its arrangement, execution, and conduct during the illegal fire burn to the PaDEP.

133.    Upon information and belief, the allegations asserted by the Fire District were pretenses for a personal animus against Mr. Chvala and his involvement with the Fire District.

134.    The accusations made against him and the wrongful termination and expulsion of his membership have irreparably damaged his personal and professional credibility, caused him to be viewed in a false light, created doubt in the community as to his character, and discredited his name and reputation, which he spent thirty (30) years building in public safety.

WHEREFORE, Plaintiff James F. Chvala respectfully requests this Honorable Court grant judgment in his favor, and against Defendant Harmony Fire District, and further award the following relief:

a.    Immediately reinstate Plaintiff as an active member of the Harmony Fire District and/or order that a full disciplinary hearing occur with Plaintiff afforded all rights of due process, including the right to be heard, render a defense, and present evidence;

b.    Compensatory damages in an amount greater than the limits for judicial arbitration;

24

c.     Punitive damages;

d.     Costs;

e.     Attorney's fees; and

f.     Any other relief deemed necessary and proper by this Honorable Court.

## COUNT IV – VIOLATION OF 42 U.S.C. § 1983

135.    Plaintiff hereby incorporates the above-pleaded paragraphs by reference as if the same were more fully set forth herein.

136.    The Fire District is a person and state actor as both are defined and understood in 42 U.S.C. § 1983 and related sections of the Civil Rights Act.

137.    As the fire department for the Municipalities, the Fire District executed and provided fire prevention and protection for the community, and was acting under color of law on August 5, 2019, when the Fire District published false and defamatory statements related to Mr. Chvala and his position during a business meeting and disciplinary hearing, a hearing that denied due process to Mr. Chvala during the entire process by which the Fire District terminated and expelled him as a member on or about August 5, 2019.

138.    Upon information and belief, through this denial of due process, the Fire District, under color of law, deprived Plaintiff of his liberty when it published false statements regarding Mr. Chvala's character to the Fire District's membership during the disciplinary hearing of August 5, 2019. The statements maligned Mr. Chvala's reputation in the community, caused Mr. Chvala to lose his membership in the Fire District, and may restrict him from being an active member/participant in any other fire department based on his alleged character.

139.    To establish a claim under Section 1983, Plaintiff must prove the following elements by a preponderance of the evidence:

a.   Plaintiff must show that defendant acted under the color of law.

b.   While acting under the color of law, defendant deprived plaintiff of a constitutional or statutory right.

140.   Specifically, disciplinary actions by volunteer fire companies, even when said fire companies are independent of any municipality, are considered state action and action by a governmental agency.

141.   Accordingly, the Fire District's policies both as written and as applied to Mr. Chvala were required to provide minimum due process necessary as required under the Fifth and Fourteenth Amendments to the United States Constitution to protect the property and liberty interests that he possessed in being a member of the Fire District's membership, as the same is provided for in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), Janusaitis v. Middlebury Volunteer Fire Department, 607 F.2d 17 (2d Cir. 1979), and their progeny.

142.   Moreover, the Fire District was required to follow and apply its policies in a manner that comported with notions of procedural and substantive due process, so as to not violate Mr. Chvala's rights provided for in Section 1983 and other relevant provisions of the Civil Rights Act.

143.   Specifically, and as outlined at length herein, the Fire District failed to provide Mr. Chvala with even the most minimum of safeguards in regard to the August 5, 2019 meeting/hearing, to wit: he had no opportunity to respond, he was not afforded an opportunity to attend the meeting/hearing, nor was he given any appellate rights.

144.   Moreover, not only did the Fire District fail to provide Mr. Chvala with the most basic of rights as asserted above, the Fire District outlined the above-stated and referenced "incidents," knowing that said incidents were false, libelous, and defamatory, and published and discussed the same with the Fire District membership.

26

145.    Upon information and belief, the Fire District failed to investigate these alleged complaints when they were received and failed to inform Mr. Chvala of the same or ask Mr. Chvala about his version of the alleged interactions that occurred in or around 2018, and therefore either failed to ascertain to truth or falsity of the alleged incidents.

146.    In publishing the four restaurant incidents, the two property misuse incidents, and the two incidents alleging conduct unbecoming a firefighter, the Fire District:

     a.     Published false statements about Mr. Chvala to persons other than Mr. Chvala;

     b.     Knew or should have known that the statements were false;

     c.     Made clear that all of the alleged statements were about Mr. Chvala;

     d.     Made the false statements knowing that the same would be injurious to Mr. Chvala's character, reputation, and credibility in the community;

     e.     Made the false statements without any regard for the statements' accuracy or whether they were even true; and

     f.     Ensured that Mr. Chvala would be terminated from the Fire District's membership, thereby causing him special harm to his reputation and his profession as a professional public safety expert, instructor, and professor.

147.    In addition to the failure of the Fire District to ascertain the truth or falsity of the statements, and in acting in reckless disregard for the same, the allegations contained in the Fire District's letter and presented during the Disciplinary Board hearing were pretenses for a personal animus against Mr. Chvala and his involvement with the Fire District.

148.    Upon information and belief, Fire District unfairly and dishonestly investigated alleged allegations, which led to the expulsion and termination of Plaintiff from the Fire District.

149.    Due to the defamatory actions of the Fire District, Mr. Chvala's public image and reputation in the community was maligned, his reputation in the community was lessened, and his professional credibility has been greatly diminished.

150.   These improper, violative, and illegal actions all occurred by the Fire District as it was acting under color of state law and/or as a governmental agency.

WHEREFORE, Plaintiff James F. Chvala respectfully requests this Honorable Court grant judgment in his favor, and against Defendant Harmony Fire District, and further award the following relief:

     a.     Immediately reinstate Plaintiff as an active member of the Harmony Fire District and/or order that a full disciplinary hearing occur with Plaintiff afforded all rights of due process, including the right to be heard, render a defense, and present evidence;

     b.     Compensatory damages in an amount greater than the limits for judicial arbitration;

     c.     Punitive damages;

     d.     Costs;

     e.     Attorney's fees;

     f.     All rights for relief and damages as provided for in 42 U.S.C. § 1988 and other relevant provisions of the Civil Rights Act; and

     g.     Any other relief deemed necessary and proper by this Honorable Court.

RESPECTFULLY SUBMITTED,

Dated: August 4, 2020

By: _____

Todd M. Pappasergi, Esquire
Pa.I.D. No. 209389
Kathleen D. Snyder, Esquire
Pa.I.D. No. 324169

THE LYNCH LAW GROUP, LLC
Cranberry Professional Park
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
TEL: (724) 776-8000
FAX: (724) 776-8001

tpappasergi@lynchlaw-group.com
ksnyder@lynchlaw-group.com



# HARMONY FIRE DISTRICT STATION 22

Proudly Serving Harmony, Jackson, Lancaster, and Zelienople

543 Main Street Harmony, PA 16037
E-mail: harmonyfiredistrict@gmail.com

Phone: (724) 452-4046
Fax: (724) 452-4792

July 29, 2019
To: James Chvala
Re: Notification

During the August 5th business meeting at 730 pm the organization will be voting via secret ballet on your future involvement in the organization. Prior to the vote the membership will have the opportunity to ask any questions in regards your history or performance as a member of the organization. At this point your personnel record is allowed to be disclosed to the membership so they can make an educated decision.

Over your time at the Harmony Fire District we have had numerous interactions in regard to your actions and conduct while in station, on calls, or in the public. At all times you are connected to the organization as a firefighter whether in uniform or not.  Documented in your file are numerous incidents that you should be aware of.

Local business incidents
Business owners from the below restaurants have reached out to the organization in regard to your conduct in public at their establishments. All of them have involved a negative interaction and portrayed the organization in a negative manner in a public setting.
   1) Subway-2018
   2) Goodfellos-9/18/18
   3) Vocellis Pizza-2/13/19
   4) Hartman's Watering Hole Restaurant-5/2018
Vehicle incidents
   1) RIT response to Big Knob- Braking Incident-6/2/2018 Verbal remediation & documentation of interaction place in your file.
   2) Fire engine backed through the office wall at the station. Jim states he found it this way when he came to the fire station for a call. The last person that was in the station was a mechanic returning it from Glick fire apparatus. No definitive answer on how it happened or who did it. Jim stated it was not him and so did the mechanic.
Conduct
   1) While teaching at Butler County Community College Instructor Chvala displayed the organization in a negative manner.  He reported false information about the organization in a class that HFD members were present. 3/8/18

EXHIBIT
A



# HARMONY FIRE DISTRICT STATION 22

**Proudly Serving Harmony, Jackson, Lancaster, and Zelienople**

543 Main Street Harmony, PA 16037
E-mail: harmonyfiredistrict@gmail.com

Phone: (724) 452-4046
Fax: (724) 452-4792

2) Charged with resisting arrest and failing to stop for a police officer by Lancaster Police.
While the charges were dropped if certain action is taken, the incident still happened.
2019

Bylaws
ARTICLE VIII
SUSPENSIONS AND EXPULSIONS
SEC. 1 Any member who abuses the privileges of membership for whatever purpose, or is
guilty of any gross immorality, shall be suspended or expelled at the option of the District.
SEC. 2 Any member, who shall offend against the Articles of the By-Laws, shall be
reprimanded, suspended or expelled as the members present at a regular meeting may
determine. .
SEC. 3 Should any member be accessory to any imposition, or aid or abet any other member
in practicing a fraud on this District, he/she shall be considered guilty as the perpetrator.
SEC. 4 Any member so expelled shall in no case be proposed for membership again. Any
member who resigns while under threat of suspension, reprimand, or expulsion shall wait a
minimum of five (5) years before being allowed to reapply.

SEC. 4 The Chief may suspend any active member from duty for reasons the Chief and at
least two (2) Line Officers deem necessary. The suspension shall only be in effect until the
next regular or stated meeting. At that time the membership shall approve or disapprove the
suspension and/or any further suspension, expulsion, or disciplinary action. The suspension
shall not affect the member's right to vote or time standing in the District.

ARTICLE VIII
EXPULSIONS
SEC. 1 All expulsions from this District shall be by secret ballot, and by the majority of the
members present. Trustees shall be in charge of voting in this Article.

The intention of this letter is to advise of what we have on file and that it will be an allowable
discussion point at the above meeting. The executive board will follow up with in the future in
regard to your status within the organization.

Respectfully,
The Executive Board

## **VERIFICATION**

I hereby certify that the facts and averments, and documents attached in support thereof, contained in this Complaint in Civil Action are true and correct to the best of my information, knowledge, and belief.  This Verification is made pursuant to the penalties provided for in 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

Dated: August 4, 2020

James F. Chvala

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Dated: August 4, 2020

By: _____

Todd M. Pappasergi, Esquire
Pa.I.D. No. 209389
THE LYNCH LAW GROUP, LLC
Cranberry Professional Park
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
TEL: (724) 776-8000
FAX: (724) 776-8001 (facsimile)

tpappasergi@lynchlaw-group.com

31